BALLON STOLL BADER & NADLER, P.C.
729 Seventh Avenue
New York, NY 10019
Telephone: (212) 575-7900
Facsimile: (212) 764-5060
Vincent J. Roldan
vroldan@ballonstoll.com

Proposed Attorneys for Debtor

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------X
In Re:                                                    Chapter 11

   YOSI SAMRA, INC.                          Case No.: 17-12493

                     Debtor
--------------------------------------------------------X

**MOTION OF DEBTOR FOR INTERIM AND FINAL ORDERS
AUTHORIZING JUNIOR DIP FINANCING, AND
<u>GRANTING ADEQUATE PROTECTION</u>**

Yosi Samra, Inc., as debtor and debtor-in possession (the "Debtor"), by and through its undersigned counsel, hereby moves this Court (the "Motion") for entry of interim and final orders (a proposed interim order is attached to this Motion as Exhibit A), under sections 105(a), 361, 362, 363, and 364 of title 11 of the United States Code (the "Bankruptcy Code") and Rule 4001 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") and Local Bankruptcy Rule 4001-2, authorizing the Debtor to enter into the DIP Loan and Security Agreement dated as of September 8, 2017 (attached to this Motion as Exhibit B, the "DIP Credit Agreement"); among the Debtor, as borrower, and Jacob Samra ("J. Samra"), as lender (in such capacity, the "DIP Lender"). In support of this Motion, the Debtor respectfully represents as follows:

1

**Summary of Relief Requested**

The Debtor respectfully requests the following relief from this Court (unless otherwise stated, all capitalized terms used but not otherwise defined in the subparagraphs below or earlier in this Motion shall have the meanings ascribed to them later in this Motion):

    i.    authorization and approval, for the Debtor to obtain post-petition financing (the "DIP Facility") up to the aggregate principal amount of $350,000 on the terms and conditions set forth in the DIP Credit Agreement, and documents contemplated thereby (collectively, with the DIP Credit Agreement, the "DIP Documents"), among the Debtor, as borrower, and the DIP Lender. The DIP Facility:

        a.    Charges 12% interest;

        b.    Matures one year after the date of a final order approving this Motion;

        c.    Contains no representations, warranties, or financial covenants.

    ii.    authorization for the Debtor to execute and enter into the DIP Documents and to perform such other and further acts as may be required in connection with the DIP Documents;

    iii.    authorization, pursuant to sections 364(c)(2) and 364(c)(3) of the Bankruptcy Code, to liens to the DIP Lender upon all property of the Debtor's estate, which DIP Liens shall be subject only to valid liens that existed as of the Petition Date and replacement liens relating thereto; and

    iv.    authorization, pursuant to section 364(c)(1) of the Bankruptcy Code, to grant Superpriority Claims to the DIP Lender with priority over all administrative expenses, other than the Carve-Out (see proposed order para 12).

The proposed DIP Facility does not include any of the provisions listed in Bankruptcy Rule 4001(c)(1)(B)(ii)-(xi), or Local Rule 4001-2(a).

**INTRODUCTION AND BACKGROUND**

1.    On September 5, 2017 (the "Petition Date"), the Debtor filed a voluntary petition for relief in this Court pursuant to Chapter 11 of Title 11, United States Code (the "Bankruptcy

Code"). Debtor remains in possession of its assets and continues management of its business as a debtor-in-possession pursuant to §§ 1107 and 1108 of the Bankruptcy Code.

2. A detailed description of the Debtor's business and the facts precipitating the filing of the Debtor's Chapter 11 proceeding is set forth in the Affidavit of Yosi Samra Pursuant to Local Bankruptcy Rule 1007-4 (the "Samra Affidavit") filed contemporaneously herewith. Those facts are incorporated herein by reference. No party has requested the appointment of a trustee or examiner in this Chapter 11 case. The U.S. Trustee has not appointed a committee of unsecured creditors in this case.

3. Prior to the Petition Date, the Debtor had sought to obtain financing, but was unable to do so. Two potential lenders effectively offered to purchase the company rather than provide loans. The Debtor believes that the terms offered by J. Samra are reasonable and are far more favorable than terms that would be offered by available lenders.

## JURISDICTION

4. This Court has jurisdiction to consider this Motion pursuant to 28 U.S.C. §§ 157(a) and 1334. This matter is a core proceeding pursuant to 28 U.S.C. § 157(b). Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

5. The statutory basis for the relief requested herein is sections 105, 361, 362, 363, 364 and 507(b) of the Bankruptcy Code, Bankruptcy Rules 2002, 4001 and 9014 and Local Bankruptcy Rule 4001-5.

## RELIEF REQUESTED

A.  The Debtor's Need for Liquidity

6. The Debtor must access the DIP Facility to provide the Debtor with necessary flexibility to operate its business in a manner that will maximize the value of its assets

as it attempts to emerge from chapter 11. The proposed financing is necessary to ensure that the Debtor has sufficient working capital and liquidity to preserve and maintain the going concern value of the Debtor's estate, which, in turn, is integral to maximizing recoveries for the Debtor's stakeholders.

B.   The Debtor's Decision to Enter into the DIP Credit Agreement

7.   The Debtor decided to enter into the DIP Credit Agreement, and conducted arm's-length and good-faith negotiations with the DIP Lender. The Debtor ultimately determined that the proposal for debtor in possession financing provided by the DIP Lender was more favorable than what would be available, and adequately addressed the Debtor's reasonably foreseeable liquidity needs.

8.   In making its decision to obtain financing from the DIP Lender, the Debtor considered many factors. First, the DIP Lender is charging the Debtor no fees or expenses relating to the DIP loan; there are no representations or warranties, or significant financial covenants. There DIP Loan is charging 12% interest, which is far less than interest that would be charged by available lenders, to the extent there are any. The DIP Lender is taking a junior lien position, and the Debtor does not believe that any other possible lender would do the same on terms as beneficial as the DIP Lender. Even if there existed a possible lender, that hypothetical lender would not be able to provide financing with the speed with which the DIP Lender is ready to provide financing. Any third party funding source would require meaningful due diligence. In contrast, the DIP Lender is ready to close the loan immediately.

9.   Second, the Debtor was unable to obtain alternative postpetition financing proposals from other lenders through credit allowable as an administrative expense under Bankruptcy Code section 503(b)(1), unsecured credit allowable under Bankruptcy Code sections

4

364(a) and 364(b), or credit secured by liens on the Debtor's assets junior to the liens of the Prepetition Lien Holders, as is contemplated by Bankruptcy Code section 364(c)(3). Thus, the Debtor did not believe that any lender would have been willing to loan new money to the Debtor other than on similar or less favorable terms to those contained in the DIP Credit Agreement. Finally, the DIP Lender's status as an insider (father of Yosi Samra, founder and 100% equity owner of the Debtor) shows the Debtor's faith in a successful reorganization.

10.    Furthermore, the proposed DIP Facility does not include any of the provisions listed in Bankruptcy Rule 4001(c)(1)(B)(ii)-(xi) or Local Rule 4001-2(a).

11.    In the exercise of its sound business judgment, the Debtor believes that the proposal for the DIP Credit Agreement provided by the DIP Lender is the most favorable under the circumstances and addresses the Debtor's working capital needs during the pendency of the Debtor's chapter 11 case. Thus, the Debtor determined that entry into the DIP Credit Agreement was in the best interests of its estate, creditors and other parties in interest.

C.    Terms of the DIP Credit Agreement

12.    The salient terms of the DIP Credit Agreement are as follows:[1]

| Borrower: | Debtor |
|---|---|
| DIP Lender: | Jacob Samra |
| Commitment: | Loans in an aggregate principal amount of not greater than $350,000 |
| Use of Proceeds: | All proceeds of the Loans shall be used solely for business operations in accordance with a court-approved budget. |

---

[1] This summary is qualified in its entirety by reference to the provisions of the DIP Credit Agreement. The DIP Credit Agreement will control in the event of any inconsistency between this Motion and the DIP Credit Agreement. Capitalized terms used in this summary but not otherwise defined in this Motion shall have the meanings ascribed to those terms in the DIP Credit Agreement.

| Term: | The Commitment of the DIP Lender to make a Loan to the Borrowers commences on the date of the DIP Credit Agreement and terminates one year after entry of a final order approving this motion. |
|---|---|
| Priority and Liens: | Subject to the entry and provisions of the Final Order, the DIP Credit Agreement grants to the DIP Lender a valid, perfected security interest in substantially all of the property of the Borrowers pursuant to sections 364(c)(2), and 364(c)(3) of the Bankruptcy Code

In addition, subject to the entry and provisions of the Final Order, the DIP Lender shall be granted Superpriority Claim status pursuant to section 365(c)(1) of the Bankruptcy Code. |
| Grant of Security Interest: | Subject to the entry and provisions of the Final Order, Borrower grants to the DIP Lender a security interest in, general lien and mortgage on and right of set-off against, all right, title and interest of such Borrower in all of the Debtor's now owned or after-acquired real and personal property, assets and rights, of any kind or nature, and the proceeds, products, rents and profits thereof. |
| Fees/ Expenses: | None |
| Interest Rate: | 12% per annum payable monthly |
| Default Interest: | 18% per annum |
| Events of Default: | Standard terms. |
| Reps & Warranties | None. |

13.     If a debtor is unable to obtain unsecured credit allowable as an administrative expense under Bankruptcy Code section 503(b)(1), then the Court, after notice and a hearing, may authorize the debtor to obtain credit or incur debt (a) with priority over any or all administrative expenses of the kind specified in Bankruptcy Code section 503(b) or 507(b); or (b) secured by a lien on property of the estate that is not otherwise subject to a lien; or (c) secured by a junior lien on property of the estate that is subject to a lien.  See 11 U.S.C. § 364(c).

D.    The DIP Facility should Be Approved

14.    The Debtor determined that it was not possible to obtain comparable or more favorable postpetition financing on an unsecured basis, and certainly not within the time periods that the Debtor's current liquidity situation permitted.

15.    The Debtor negotiated the DIP Credit Agreement with the DIP Lender at arm's length and pursuant to its business judgment. Provided that this judgment does not run afoul of the provisions of and policies underlying the Bankruptcy Code, courts grant a debtor considerable deference in acting in accordance with its business judgment. See, e.g., Brav v. Shenandoah Fed. Sav. & Loan Ass'n (In re Snowshoe Co.), 789 F.2d 1085, 1088 (4th Cir. 1986) (approving debtor in possession financing necessary to sustain seasonal business); In re Ames Department Stores, 115 B.R. 34, 40 (S.D.N.Y. 1990) ("cases consistently reflect that the court's discretion under section 364 is to be utilized on grounds that permit reasonable business judgment to be exercised so long as the financing agreement does not contain terms that leverage the bankruptcy process and powers or its purpose is not so much to benefit the estate as it is to benefit parties in interest").

16.    The Debtor recognizes that because the DIP Lender is an insider, the proposed transaction is subject to greater scrutiny. See WHBA Real Estate Ltd. Pship v. Lafayette Hotel Pshp (In re Lafayette Hotel Pshp), 227 B.R. 445 (S.D.N.Y. 1998). The Debtor respectfully submits that the proposed financing is arms-length and is on terms that are fair. As indicated above, the Debtor does not believe there are any alternatives. The DIP Lender is not charging any fees, points or expenses, nor is it requirement any representations, warranties, or financial covenants. The DIP Lender is also not requiring provisions that are common to debtor in possession financing that are listed in Bankruptcy Rule 4001, such as a waiver of the automatic stay, milestones, deadlines, indemnity, releases, or a lien on avoidance actions.

7

17. In contrast, the the financing under the DIP Credit Agreement does provide significant new liquidity to the Debtor and thus will fund ordinary course of business operations and other administrative claims as the Debtor seeks to emerge from chapter 11. Given the lack of any other alternatives, the Debtor believes that such financing is the sole means of maximizing the return to creditors through reorganization.

18. The Debtor thus respectfully submits that the terms and conditions of the DIP Credit Agreement are fair and reasonable and were negotiated by the parties in good faith and at arms' length. Accordingly, the DIP Lender should be accorded the benefits of Bankruptcy Code section 364(e) in respect of the DIP Credit Agreement.

19. Based upon the foregoing, the Debtor respectfully requests that this Court approve the DIP Facility and DIP Credit Agreement in accordance with the terms and conditions set forth in the Final Order and the DIP Credit Agreement.

## Bankruptcy Rule Requirements

25. Pursuant to Bankruptcy Rule 4001(c) and Local Bankruptcy Rule 4001-2, the details of the DIP Credit Agreement and the Final Order related to obtaining credit are a grant of a lien on property of the estate under section 364(c)(3), and no other provision listed in Bankruptcy Rule 4001(c).

## NOTICE

26. Service of this Motion will be made by mail by notice of presentment on (i) the Office of the United States Trustee for the Southern District of New York, (ii) all parties having requested notices in the case, (iii) the Debtor's secured creditors, and (iv) the Debtor's twenty (20) largest unsecured creditors. The Debtor submits that no other or further notice need be provided.

## NO PRIOR REQUEST

27. No previous request for the same or similar relief has been made.

## CONCLUSION

WHEREFORE, the Debtor respectfully requests that the Court enter an order substantially in the form of the proposed Final Order, together with such other and further relief as this Court deems just and proper.

Dated: New York, New York
September 8, 2017

Respectfully submitted,

BALLON STOLL BADER & NADLER, P.C.

By: __/s/ Vincent J. Roldan_____
Vincent J. Roldan
*Proposed Attorneys for Debtor*
729 Seventh Avenue – 17th Floor
New York, NY 10019
212.575-7900
Fax 212.764-5060
www.ballonstoll.com