Jeffrey R. Gleit, Esq.
Allison H. Weiss, Esq.
**SULLIVAN & WORCESTER LLP**
1633 Broadway
New York, New York 10019
(212) 660-3000 (Telephone)
(212) 660-3001 (Facsimile)

*Counsel for the Official Committee of Unsecured Creditors of Yosi Samra, Inc.*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

——————————————————————— )
                                                              )     Chapter 11
In re:                                                      )
                                                              )     Case No. 17-12493 (SCC)
YOSI SAMRA, INC.,                          )
                                                              )
                               Debtor.              )
——————————————————————— )

**NOTICE OF OFFICIAL COMMITTEE OF UNSECURED CREDITORS' MOTION
PURSUANT TO BANKRUPTCY CODE SECTION 1112(b) FOR ENTRY OF AN
ORDER (I) CONVERTING THIS CHAPTER 11 CASE TO A CHAPTER 7 CASE, (II)
DIRECTING THE UNITED STATES TRUSTEE TO IMMEDIATELY APPOINT AN
INDEPENDENT CHAPTER 7 TRUSTEE, AND (III) GRANTING RELATED RELIEF**

        **PLEASE TAKE NOTICE** that on February 25, 2019, the Official Committee of

Unsecured Creditors of Yosi Samra, Inc. (the "**Committee**"), filed the attached *Official*

*Committee of Unsecured Creditors' Motion Pursuant to Bankruptcy Code section 1112(b) for*

*Entry of an Order (I) Converting this Chapter 11 Case to a Chapter 7 Case, (II) Directing the*

*United States Trustee to Immediately Appoint an Independent Chapter 7 Trustee, and (III)*

*Granting Related Relief* (the "**Motion**") with the United States Bankruptcy Court for the

Southern District of New York (the "**Bankruptcy Court"**).

        **PLEASE TAKE FURTHER NOTICE** that the Motion is scheduled to be heard by the

Bankruptcy Court on March 27, 2019 at 10:00 a.m. (prevailing Eastern Time) before the

Honorable Shelley C. Chapman, United States Bankruptcy Court for the Southern District of New York, One Bowling Green, New York, New York 10004 (the "**Hearing**").

PLEASE TAKE FURTHER NOTICE that responsive papers or objections, if any, to the Motion shall (i) be in writing, (ii) conform to the Federal Rules of Bankruptcy Procedure and the Local Rules for the Southern District of New York, (iii) be filed with the Bankruptcy Court (a) by registered users of the Bankruptcy Court's case filing system, electronically in accordance with General Order M-399 (which can be found at http://www.nysb.uscourts.gov/) and (b) by all other parties in interest, on a CD-ROM, in text-searchable portable document format (PDF) (with a hard copy delivered directly to Chambers), in accordance with the customary practices of the Bankruptcy Court and General Order M-399, to the extent applicable, and (iv) be served on (x) counsel for the Official Committee of Unsecured Creditors of Yosi Samra, Inc., Sullivan & Worcester LLP, 1633 Broadway, New York, New York 10019 (Attn: Allison H. Weiss, Esq.); (y) counsel for the Debtor, Ballon Stoll Bader & Nadler P.C., 729 Seventh Avenue 17th Floor, New York, New York 10019 (Attn: Vincent J. Roldan, Esq.); and, (z) the Office of the United States Trustee for the Southern District of New York, U.S. Federal Office Building, 201 Varick Street, Room 1006, New York, New York 10014 (Attn: Susan Arbeit, Esq.), so as to be *actually received* on or before **March 20, 2019 at 4:00 p.m. (prevailing Eastern Time)**.

PLEASE TAKE FURTHER NOTICE that the Hearing may be continued or adjourned from time to time without further notice other than an announcement of the adjourned date or dates in open court at the Hearing.

Dated: New York, New York
      February 25, 2019

**SULLIVAN & WORCESTER LLP**


*/s/   Allison H. Weiss*
Jeffrey R. Gleit, Esq.
Allison H. Weiss, Esq.
1633 Broadway
New York, New York 10019
(212) 660-3000 (Telephone)
(212) 660-3001 (Facsimile)
jgleit@sandw.com
aweiss@sandw.com

*Counsel for the Official Committee of Unsecured Creditors of Yosi Samra, Inc.*

Jeffrey R. Gleit, Esq.
Allison H. Weiss, Esq.
**SULLIVAN & WORCESTER LLP**
1633 Broadway
New York, New York 10019
(212) 660-3000 (Telephone)
(212) 660-3001 (Facsimile)

*Counsel for the Official Committee of Unsecured Creditors of Yosi Samra, Inc.*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

——————————————————————— )
                                                               )        Chapter 11
In re:                                                     )
                                                               )        Case No. 17-12493 (SCC)
YOSI SAMRA, INC.,                          )
                                                               )
                            Debtor.                   )
——————————————————————— )

**OFFICIAL COMMITTEE OF UNSECURED CREDITORS' MOTION PURSUANT TO
BANKRUPTCY CODE SECTION 1112(b) FOR ENTRY OF AN ORDER (I)
CONVERTING THIS CHAPTER 11 CASE TO A CHAPTER 7 CASE, (II) DIRECTING
THE UNITED STATES TRUSTEE TO IMMEDIATELY APPOINT AN INDEPENDENT
<u>CHAPTER 7 TRUSTEE, AND (III) GRANTING RELATED RELIEF</u>**

# TABLE OF CONTENTS

PRELIMINARY STATEMENT ................................................................................................ 1

JURISDICTION AND VENUE ........................................................................................... 3

BACKGROUND .................................................................................................................. 3

    The Plan Negotiations ................................................................................................... 4

    The Plan and Disclosure Statement ............................................................................. 5

    The Second Amended Plan and Disclosure Statement ................................................ 7

    The Aftermath .............................................................................................................. 8

RELIEF REQUESTED ........................................................................................................ 9

BASIS FOR RELIEF REQUESTED ................................................................................... 9

    (I) Substantial or Continuing Loss to or Diminution of the Estate and the Absence of a
    Reasonable Likelihood of Rehabilitation ................................................................... 10

        (a) Substantial or Continuing Loss to or Diminution of the Estate ...................... 10

        (b) Absence of a Reasonable Likelihood of Rehabilitation ................................... 13

    (II) The Debtor has Failed to Confirm a Plan Within the Time Fixed by the Court ................. 14

    (III) Converting the Chapter 11 Case to Chapter 7 is in the Best Interest of Creditors ........... 15

RESERVATION OF RIGHTS ............................................................................................ 16

NOTICE .............................................................................................................................. 16

NO PRIOR REQUEST ....................................................................................................... 16

# TABLE OF AUTHORITIES

Page(s)

**Cases**

In re 1031 Tax Group, LLC,
374 B.R. 78 (Bankr. S.D.N.Y. 2007) ................................................................. 10

In re AdBrite Corp.,
290 B.R. 209 (Bankr. S.D.N.Y. 2003) ............................................................... 13

In re Alston,
2019 U.S. App. LEXIS 4713 (3d. Cir. Feb. 15, 2019) ....................................... 12

In re BH S&B Holdings, LLC,
439 B.R. 342 (Bankr. S.D.N.Y. 2010) ............................................................... 10

In re Bronx Miracle Gospel Tabernacle Word of Faith Ministries,
2018 Bankr. LEXIS 1534 (Bankr. S.D.N.Y. May 23, 2018) ............................... 14

In re East 81st, LLC,
2014 Bankr. LEXIS 1024 (Bankr. S.D.N.Y. Mar. 17, 2014) .............................. 10

In re Keener,
2018 Bankr. LEXIS 1108 (Bankr. N.D. Iowa Apr. 10, 2018) ............................ 14

In re Red Bull Taxi Inc.,
2017 Bankr. LEXIS 1209 (Bankr. S.D.N.Y. May 3, 2017) ............................. 9, 12

In re Seneca BioEnergy, LLC,
2015 Bankr. LEXIS 1685 (Bankr. W.D.N.Y. May 19, 2015) .............................. 13

In re Speer,
2018 U.S. Dist. LEXIS 13470 (D. Conn. Jan. 29, 2018) .................................... 15

In re Strawbridge,
2010 Bankr. LEXIS 544 (Bankr. S.D.N.Y. Mar. 5, 2010) .................................. 13

Loop Corp. v. United States Trustee,
379 F.3d 511 (8th Cir. 2004) .............................................................................. 10

Lynch v. Barnard,
590 B.R. 30 (E.D.N.Y. 2018) ........................................................................... 9, 14

Taub v. Taub (In re Taub),
427 B.R. 208 (Bankr. E.D.N.Y. 2010) ........................................................... 12, 13

**Statutes**

11 U.S.C. § 1107(a) ............................................................................................................ 4

11 U.S.C. § 1108 ................................................................................................................. 4

11 U.S.C. § 1112(b) ................................................................................................ 1, 3, 9, 10

11 U.S.C. § 1112(b)(4) ....................................................................................................... 9

11 U.S.C. § 1112(b)(4)(A) ........................................................................... 9, 10, 12, 13, 14

11 U.S.C. § 1112(b)(4)(B) ................................................................................................. 10

11 U.S.C. § 1112(b)(4)(J) ....................................................................................... 10, 14, 15

11 U.S.C. § 1112(b)(4)(K) ................................................................................................. 10

28 U.S.C. § 157 ................................................................................................................... 3

28 U.S.C. § 157(b)(2) ......................................................................................................... 3

28 U.S.C. § 1334 ................................................................................................................. 3

28 U.S.C. § 1408 ................................................................................................................. 3

28 U.S.C. § 1409 ................................................................................................................. 3

**Other Authorities**

7 COLLIER ON BANKRUPTCY ¶ 1112.04 (16th ed. 2018) ............................................... 16

The Official Committee of Unsecured Creditors of Yosi Samra, Inc. (the "**Committee**"), by and through its undersigned counsel, hereby files this motion (the "**Motion**") pursuant to section 1112(b) of title 11 of the United States Code (the "**Bankruptcy Code**"), for the entry of an order in substantially in the form attached hereto as Exhibit A (i) converting this chapter 11 case (the "**Chapter 11 Case**") to a chapter 7 case; (ii) directing the United States Trustee for the Southern District of New York (the "**U.S. Trustee**") to immediately appoint an independent chapter 7 trustee; and (iii) granting related relief. In support of the Motion, the Committee respectfully represents as follows:

## PRELIMINARY STATEMENT

1.      The Chapter 11 Case should promptly be converted to chapter 7. Since commencing this case, the Debtor has been on life support—despite its reliance on monthly loans and advances to stay financially afloat—the Debtor has nonetheless suffered continuing losses, operated with consistently negative cash flow, and has failed to stay current on its post-petition obligations. To survive chapter 11, the Debtor needed to confirm a plan of reorganization and emerge from bankruptcy quickly—so mounting administrative expenses, including professional fees, could be avoided. All parties in interest knew about this need for speed—the Debtor, the Committee, the U.S. Trustee, and, presumably, Jacob Samra—the Debtor's junior DIP lender, the Debtor's principal's father, and most importantly, an "insider" of the Debtor.

2.      In December 2017, Jacob Samra sent to the Debtor and the Committee a term sheet as the basis for a plan of reorganization. Pursuant to the term sheet, Jacob Samra would fund a plan, which would enable the Debtor to emerge quickly from chapter 11, while providing a small distribution to unsecured creditors, to be paid in installments over time, but would be

personally guaranteed by Jacob Samra and secured by a mortgage on his real property. The term sheet also provided that Jacob Samra's secured debt would be converted to equity, and that Jacob Samra would invest additional funds for the payment of allowed professional fees.

3. Negotiations on the term sheet were difficult and time consuming. After several months, an agreement on the terms of the Debtor's plan of reorganization (the "**Plan**") was finally reached. Agreeing to the terms and documenting the collateralization of Jacob Samra's funding proved problematic however, and significant delays by Jacob Samra in responding to the Committee's comments and revisions slowed the deal down. When Jacob Samra finally responded, the deal all but fell apart. Jacob Samra then revised the deal, and again committed to fund the Plan, although this time by providing less of a distribution to unsecured creditors, but in all cash on the Plan's effective date. Jacob Samra's revised commitment also provided that the cash would be put into escrow three days prior to the hearing to confirm the Plan (the "**Confirmation Hearing**").

4. Committee counsel worked tirelessly with the Debtor's counsel on revising the bankruptcy documents so the Plan could be confirmed. A disclosure statement in respect of the Plan was ultimately approved and the Debtor solicited votes on the Plan. All creditors who returned ballots to the Debtor by the voting deadline voted in favor of the Plan. Confirmation was imminent, and the Confirmation Hearing was scheduled to occur on January 10, 2019.

5. On January 8, 2019, the Debtor adjourned the Confirmation Hearing indefinitely. Jacob Samra had reneged on the deal and refused to fund the Debtor's Plan. Thirteen months of administrative expenses, including significant and unpaid professional fees, had accrued. Moreover, the Debtor was still cash flow negative, as well as administratively insolvent, with no prospect of reorganization or rehabilitating its business. Jacob Samra had degraded the value of

the Debtor's business and at the eleventh hour had walked away from his commitment with the

Debtor and the Committee to fund the Plan. Adding insult to injury, on February 18, 2019, Jacob

Samra sent to the Committee a new term sheet, seeking to acquire the Debtor's assets "on the

cheap" for $200,000.00, without the protection of a plan process, and with no provision for

distribution to administrative or unsecured creditors.

6.      It is imperative and in the best interests of creditors that the Chapter 11 Case be

converted to chapter 7 and that a chapter 7 trustee is immediately appointed to liquidate the

Debtor's remaining assets, and pursue all sources of recovery, including causes of action against

Jacob Samra, and possibly his sons, Yosi Samra and Eric Samra. Because of Jacob Samra's bad

faith, delays, and last minute refusal to fund the Plan, the Chapter 11 Case was unnecessarily

prolonged to the detriment of creditors. Indeed, Jacob Samra destroyed the value of the Debtor's

business and a plan of reorganization is neither feasible nor possible.  It is time to convert the

Chapter 11 Case and salvage for the benefit of creditors the Debtor's remaining assets.

## JURISDICTION AND VENUE

7.      The Bankruptcy Court has jurisdiction over this matter pursuant to 28 U.S.C. §§

157 and 1334. This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2).

8.      Venue is proper before the Bankruptcy Court pursuant to 28 U.S.C. §§ 1408 and

1409.

9.      The statutory predicate for the relief requested herein is section 1112(b) of the

Bankruptcy Code.

## BACKGROUND

10.      On September 5, 2017 (the "**Petition Date**"), the Debtor filed a voluntary petition

for relief under the Bankruptcy Code in the United States Bankruptcy Court for the Southern

District of New York, Case No. 17-12493 (SCC). The Debtor has continued to operate its business and manage its properties as a debtor in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. No request for the appointment of a trustee or examiner was made in the Chapter 11 Case.

11.     On September 27, 2017, the U.S. Trustee, pursuant to Bankruptcy Code section 1102, appointed the Committee. The following members comprise the Committee: (i) Dara Partners LP; (ii) US Software Group Inc.; and (iii) WFC Fund LLC [Docket No. 46].

***The Plan Negotiations***

12.     On December 5, 2017, the Debtor provided to the Committee a term sheet which was to be the basis for the Plan. The term sheet provided for, *inter alia*, (i) a new value contribution from Jacob Samra, the Debtor's father and junior DIP lender[1], payable to unsecured creditors in installments over time, (ii) an additional investment for payment of allowed professional fees, and (iii) the conversion of Jacob Samra's secured debt to equity.

13.     Over the next several months, the Debtor and the Committee negotiated with Jacob Samra the terms of the term sheet, in the hopes that such terms would ultimately become the terms of the Plan.[2]

14.     On May 22, 2018, after months of protracted negotiations, the Committee and the Debtor finally agreed to the terms of the Plan and over the next few months negotiated, drafted, and revised the Plan and a disclosure statement in respect of the Plan.

---

[1] Pursuant to the *Final Order (I) Approving Debtor-In-Possession Financing Pursuant to 11 U.S.C. §§ 105(a), 362, and 364 and Fed. Bankr. P. 2002, 4001 and 9014 and Local Bankruptcy Rule 4001-2; (II) Granting Adequate Protection and Superpriority Administrative Claims; and (III) Granting Related Relief*, the Debtor was authorized to obtain post-petition financing from Jacob Samra up to the aggregate amount of $350,000 [Docket No. 84]. This amount was in addition to $615,000 of pre-petition secured debt held by Jacob Samra.
[2] During these months of negotiations, the Debtor filed, with the Committee's consent, three motions, on December 11, 2017 [Docket No. 100], February 5, 2018 [Docket No. 116], and March 20, 2018 [Docket No. 136], respectively, seeking to extend the Debtor's exclusive period to file a plan and solicit acceptances thereon, and the Bankruptcy Court entered three orders, on December 28, 2017 [Docket No. 109], February 20, 2018 [Docket No. 127] and April 5, 2018 [Docket No. 144], respectively, extending the Debtor's exclusivity period.

*The Plan and Disclosure Statement*

15.     On August 15, 2018, the Debtor filed the *Disclosure Statement for Chapter 11 Plan of Reorganization on behalf of Yosi Samra, Inc.*[Docket No. 178] (the "**Disclosure Statement**"), with the Plan attached thereto, as well as the *Motion for Conditional Approval of Disclosure Statement*, which requested (i) conditional approval of the Disclosure Statement, (ii) approval of the ballots and solicitation packages for voting on the Plan, (iii) the scheduling of a combined hearing to approve the Disclosure Statement and confirm the Plan (the "**Combined Approval Hearing**"), and (iv) approval of various dates and deadlines with respect to solicitation of, voting on, and objecting to the Plan [Docket No. 179].

16.     The Plan filed with the Disclosure Statement[3] provided, *inter alia*, for a new value contribution in the amount of $700,000.00 from Jacob Samra for the benefit of unsecured creditors (the "**New Value Contribution**"). Pursuant to the Amended Plan, $100,000.00 of the New Value Contribution would be paid in cash on the effective date of the Amended Plan, and the remaining $600,000.00 would be paid to unsecured creditors over a period of five years (administered by and distributed through a creditors' trust), personally guaranteed by Jacob Samra and collateralized by mortgages on his properties. The Amended Plan also provided that Jacob Samra would contribute an additional $75,000.00 for the payment of allowed professional fee claims.

17.     The Amended Plan also contained "Non-Debtor Releases" (the "**Releases**"), pursuant to which, in order to receive a distribution under the Amended Plan, unsecured creditors were required to release the "Released Parties," as defined in the Amended Plan, including Jacob

---

[3] On September 14, 2018, the Debtor filed the *Amended Disclosure Statement on behalf of Yosi Samra, Inc.* (the "**Amended Disclosure Statement**"), with an amended plan attached thereto (the "**Amended Plan**") [Docket No. 187]. The Amended Disclosure Statement and the Amended Plan did not contain significant substantive revisions, but rather, for the most part, corrected typos and fixed formatting issues.

Samra, Yosi Samra and Eric Samra, from all claims and causes of action ("the **Death Trap Provision**"), including personal liability pursuant to personal guaranties.[4]

18. Jacob Samra's New Value Contribution of $700,000.00 to fund the Amended Plan was explicitly conditioned on the Releases[5]: "[T]he Non-Debtor Release is a key condition to the Jacob Samra's (*sic*) agreement to make the New Value Contribution. Without it, the Debtor would have no way of funding a distribution to unsecured creditors." [Docket No. 178, p. 41; Docket 187, p. 42].

19. At the Combined Approval Hearing on September 20, 2018, the Bankruptcy Judge adjourned the conditional approval of the Amended Disclosure Statement so that the Debtor could revise extensively the Amended Disclosure Statement, the Amended Plan, and the ancillary documents thereto (collectively, the "**Plan Documents**").

20. For the next eight weeks, the Committee expended significant time revising the Plan Documents and negotiating with Jacob Samra and the Debtor the terms of, among other documents, the guarantees, mortgages, and trust agreement. It was extremely difficult for the Committee to reach an agreement with the Debtor and Jacob Samra on the terms of these documents, and Jacob Samra caused significant delay by failing to respond to the Committee's comments and revisions for several weeks at a time.[6]

21. On October 31, 2018, the Debtor informed the Committee that Jacob Samra had changed the amount and structure of his funding of the Amended Plan, and was now offering to provide the New Value Contribution in the amount of $500,000.00, in cash, on the effective date of the Amended Plan (the **"Revised Funding Commitment"**). At a hearing on November 19,

---

[4] Several unsecured creditors in the Chapter 11 Case hold personal guaranties against Yosi Samra.
[5] The Committee, as well as several individual unsecured creditors, found the Releases and the Death Trap Provision objectionable; some creditors formally objected to these provisions. The Bankruptcy Court and the U.S. Trustee also took issue with the Releases and the Death Trap Provision.
[6] Because of the delays caused by Jacob Samra, the Combined Approval Hearing was adjourned several times.

2018, the Debtor informed the Bankruptcy Court and the Committee that in addition to the Revised Funding Commitment, Jacob Samra had also agreed to remove the Releases and the Death Trap Provision from the Amended Plan.[7]

***The Second Amended Plan and Disclosure Statement***

22. On November 28, 2018, the Debtor filed the *Second Amended Disclosure Statement on behalf of Yosi Samra, Inc.,* (the "**Second Amended Disclosure Statement**"), with the Second Amended Plan (the **"Second Amended Plan"**) attached thereto [Docket No. 215], as well as a *Motion to Approve Disclosure Statement* [Docket No. 217].

23. The Second Amended Plan provided for, *inter alia,* (i) the New Value Contribution from Jacob Samra in the amount of $500,000.00 in cash, on the effective date of the Second Amended Plan, for the benefit of unsecured creditors, (ii) the contribution of an additional $75,000.00 from Jacob Samra for the payment of allowed professional fee claims, and (iii) a requirement that the $500,000.00 New Value Contribution be placed into escrow three days prior to the Confirmation Hearing.

24. On December 4, 2018, the Bankruptcy Court entered the *Order (I) Approving Debtor's Second Amended Disclosure Statement as Providing Adequate Information Under Bankruptcy Code Section 1125(a)(1), (II) Establishing Deadlines and Procedures for Voting On the Plan, and (III) Granting Related Relief* [Docket No. 221] (the "**Disclosure Statement Order**"), wherein the Court, *inter alia,* (a) approved the Second Amended Disclosure Statement as providing adequate information, (b) authorized the solicitation of votes on the Second Amended Plan, (c) established a deadline of January 3, 2019 for returning ballots to the Debtor (the "**Voting Deadline**"), and (d) scheduled the Confirmation Hearing for January 10, 2019.

---

[7] As a result of the Revised Funding Commitment and the removal of the Releases and Death Trap Provision from the Amended Plan, the hearing on approval of the Amended Disclosure was further adjourned so that the Amended Disclosure Statement and the Amended Plan could be revised.

25.     On December 6, 2018, the Debtor served the solicitation packages on creditors entitled to vote on the Second Amended Plan. [Docket No. 224].

26.     All creditors who returned ballots to the Debtor by the Voting Deadline voted in favor of the Second Amended Plan.

27.     Irrespective of the unanimous votes received by the Debtor in favor of the Second Amended Plan, on January 8, 2019, two days prior to the Confirmation Hearing, the Debtor adjourned the Confirmation Hearing "to a date to be determined" [Docket No. 230], and informed the Committee that Jacob Samra had reneged on the Revised Funding Commitment and was refusing to fund the Second Amended Plan.

***The Aftermath***

28.     Since informing the Committee that Jacob Samra had walked away from his commitment to fund the Second Amended Plan, the Debtor has advised the Committee several times that it was "waiting on term sheets" from alternative plan financiers.

29.     At a status conference on January 29, 2019, the Bankruptcy Court informed the Debtor that if it did not have a firm commitment by the end of February, the U.S. Trustee would move to convert the Chapter 11 Case.

30.     On February 18, 2019, the Debtor forwarded to the Committee a term sheet (the "**February 2019 Term Sheet**") from Jacob Samra seeking to acquire the Debtor's assets through a private sale for $200,000.00, plus the assumption of a few post-petition liabilities.[8] The February 2019 Term Sheet does not provide for any distribution to administrative or unsecured creditors.

---

[8] According to the Debtor, the post-petition liabilities Jacob Samra seeks to assume in the February 2019 Term Sheet are liabilities owed to various factories that are currently holding up shipment of the Debtor's spring shoes, *i.e.*, Jacob Samra is only seeking to assume those labilities that are crucial to the continuation of the Debtor's business at this time.

31.     On February 25, 2019, the Debtor's counsel filed a Motion to Withdraw as Counsel of Record for the Debtor [Docket No. 240].

32.     After negotiating in good faith with the Debtor and Jacob Samra for more than a year, while the Debtor's business suffered continuous losses and administrative expenses accrued, the February 2019 Term Sheet and Jacob Samra's attempt to buy the Debtor's business "on the cheap" after destroying its value, is a slap in the face to the Committee and the Debtor's creditors. Jacob Samra, as an "insider" of the Debtor, is subject to and must be held to the heightened scrutiny that is commanded from those veiled with such status.

## RELIEF REQUESTED

33.     By this Motion, the Committee seeks, pursuant to section 1112(b) of the Bankruptcy Code, the entry of an order (i) converting the Chapter 11 Case to a chapter 7 case; (ii) directing the U.S. Trustee to immediately appoint an independent chapter 7 trustee; and (iii) granting related relief.

## BASIS FOR RELIEF REQUESTED

34.     Bankruptcy Code section 1112(b) provides, in pertinent part:

> Except as provided in paragraph (2) and subsection (c), on request of a party in interest, and after notice and a hearing, the court shall convert a case under this chapter to a case under chapter 7 or dismiss a case under this chapter, whichever is in the best interests of creditors and the estate, for cause unless the court determines that the appointment under section 1104(a) of a trustee or an examiner is in the best interests of creditors and the estate.

35.     Bankruptcy Code section 1112(b)(4) sets forth a non-exhaustive list of circumstances constituting cause, and grants the bankruptcy court broad equitable discretion to grant relief based upon the particular facts and circumstances of the case. C-TC 9th Ave. P'ship v. Norton Co. (In re C-TC 9th Ave. P'ship), 113 F.3d 1304, 1311 and n.5 (2d Cir. 1997); Lynch

v. Barnard, 590 B.R. 30, 36 (E.D.N.Y. 2018); see also In re Red Bull Taxi Inc., 2017 Bankr.

LEXIS 1209, at *5 (Bankr. S.D.N.Y. May 3, 2017).

36.     Here, there is significant cause to convert the Chapter 11 case under (i)

Bankruptcy Code section 1112(b)(4)(A), based upon "substantial or continuing loss to or

diminution of the estate and the absence of a reasonable likelihood of rehabilitation"; and (ii)

Bankruptcy Code section 1112(b)(4)(J), based upon the "failure to file a disclosure statement, or

to file or confirm a plan, within the time fixed by this title or by order of the court."[9]

***(I) Substantial or Continuing Loss to or Diminution of the Estate and the Absence of a Reasonable Likelihood of Rehabilitation***

37.     Demonstrating cause under Bankruptcy Code section 1112(b)(4)(A) requires

establishing both the "substantial or continuing loss to or diminution of the estate" prong as well

as the "absence of a reasonable likelihood of rehabilitation" prong. In re BH S&B Holdings,

LLC, 439 B.R. 342, 347 (Bankr. S.D.N.Y. 2010) (citing In re 1031 Tax Group, LLC, 374 B.R.

78, 93 (Bankr. S.D.N.Y. 2007)).

### *(a) Substantial or Continuing Loss to or Diminution of the Estate*

38.     Each of (i) negative cash flow or (ii) continued monthly losses, on its own, is

sufficient to establish "substantial or continuing loss or diminution" under Bankruptcy Code

section 1112(b)(4)(A). In re East 81st, LLC, 2014 Bankr. LEXIS 1024, at *17 (Bankr. S.D.N.Y.

Mar. 17, 2014) ("A negative cash flow is sufficient standing alone to establish continuing loss or

diminution.") (citing Loop Corp. v. United States Trustee, 379 F.3d 511, 515-16 (8th Cir. 2004));

---

[9] While there is also sufficient cause to covert the Chapter 11 Case under (i) Bankruptcy Code section 1112(b)(4)(B), based upon "gross mismanagement of the estate," as a result of the Debtor's serial delinquency with respect to filing its monthly operating reports as required and on time; and (ii) Bankruptcy Code section 1112(b)(4)(K), based upon the "failure to pay any fees or charges required under chapter 123 of title 28," as a result of the Debtor's failure to pay timely U.S. Trustee fees, a motion to convert under these provisions of Bankruptcy Code section 1112(b)(4) is more properly filed by the U.S. Trustee.

see also In re BH S&B Holdings, LLC, 439 B.R. at 347 (established continuing loss through continued monthly losses on MORs and a large cumulative loss since filing date).

39.     Pursuant to the Debtor's Monthly Operating Reports ("**MORs**")[10], it is clear that throughout the entirety of the Chapter 11 Case, the Debtor relied heavily on loans and advances to maintain its cash flow. From the Petition Date through October 2018, *i.e.*, the date of the Debtor's most recently filed MOR, the Debtor received more than $1.5 million in loans and advances, or an average of more than $110,000 per month.[11] Irrespective of these significant Loans and Advances, the Debtor still reported negative cash flows of nearly $108,000.00, or $7,692.70 per month on average, and, factoring out these external cash infusions, the Debtor reported negative net cash flow of more than $1.6 million for the fourteen (14) month period from the Petition Date through October 2018, or an average of approximately $118,500 per month.[12]

---

[10] The Debtor's MORs were filed as follows:

| Reporting Period | Date Filed | Docket Number |
| --- | --- | --- |
| September 2017 | November 29, 2017 | Docket No. 93 |
| September 2017 (Refiled) | January 24, 2018 | Docket No. 113 |
| October 2017 | January 24, 2018 | Docket No. 114 |
| November 2017 | January 24, 2018 | Docket No. 115 |
| December 2017 | February 23, 2018 | Docket No. 128 |
| January 2018 | March 19, 2018 | Docket No. 132 |
| February 2018 | July 20, 2018 | Docket No. 170 |
| March 2018 | November 19, 2018 | Docket No. 210 |
| April 2018 | August 17, 2018 | Docket No. 181 |
| May 2018 | September 18, 2018 | Docket No. 191 |
| June 2018 | November 19, 2018 | Docket No. 208 |
| July 2018 | November 19, 2018 | Docket No. 209 |
| August 2018 | January 28, 2019 | Docket No. 234 |
| September 2018 | January 28, 2019 | Docket No. 235 |
| October 2018 | January 28, 2019 | Docket No. 236 |

Note that the Debtor's original MOR for September 2017 [Docket No. 93] was refiled [Docket No. 113].

[11] These amounts were calculated from the Debtor's entries for Loans and Advances ("**Loans and Advances**") on the Schedule for Cash Receipts and Disbursements in the MORs. For each of the months that the Debtor has filed a MOR, the Debtor has reported Loans and Advances in amounts between $35,000.00 and $181,000.00.

[12] These amounts were calculated using the Debtor's entries for Total Receipts on the Schedule for Cash Receipts and Disbursements on the MORs and subtracting from those amounts (a) the Loans and Advances reported and (b) the Debtor's entries for Total Disbursements.

40.     In addition to negative cash flow, the Debtor has similarly recorded substantial losses. In the Debtor's most recent MOR, for the period October 2018, it reported an aggregate loss of $504,913.08 since the Petition Date, and this loss does not take into account or include reorganization expenses, in the total amount of $445,986.64—an amount that, for the most part, has not been paid by the Debtor during the pendency of the Chapter 11 Case. These reorganization expenses, when added to the aggregate loss $504,913.08, indicate a total loss in the amount of $950,899.72.[13]

41.     Another indicator of substantial or continuing loss or diminution of the estate is insufficient post-petition revenue to meet expenses. In re Red Bull Taxi Inc., 2017 Bankr. LEXIS 1209, at *6-7 (finding that although case was only five months old, the continued accrual of unpaid administrative expenses during that time proved sufficient cause for the first prong of section 1112(b)(4)(A)); see also In re Alston, 2019 U.S. App. LEXIS 4713, at *6 (3d Cir. Feb. 15, 2019) (upholding dismissal based on section 1112(b)(4)(A) where debtor failed to make post-petition mortgage payments, caused unpaid administrative expenses to mount, and had an average negative cash flow over the prior six months); Taub v. Taub (In re Taub), 427 B.R. 208, 231 (Bankr. E.D.N.Y. 2010) (stating that it is not necessary for losses to the estate to be large, just that there is some diminution in value).

42.     In the Chapter 11 Case, in addition to reorganization expenses in the amount of $445,986.64, the majority of which the Debtor has not paid, as of October 2018, the Debtor had

---

[13] See the Debtor's entries for Net Profit (Loss) Before Reorganization Items and Total Reorganization Expenses on the Statement of Operations (Income Statement) included in the Debtor's MOR for the period October 2018 [Docket No. 236, pp. 4-5]. The Debtor has reported losses in 10 of the 14 MORs filed, before accounting for reorganization expenses—that is, the Debtor has failed to turn a profit even without including the expenses of professional fees and U.S. Trustee fees that the Debtor has incurred in relation to the bankruptcy process. When these reorganization expenses are included in the Debtor's expenses, the Debtor has reported a loss for all 14 months.

$687,743.35 of post-petition accounts payable outstanding—over $300,000.00 of which was more than 60 days past due.[14]

43.     Throughout the entirety of the Chapter 11 Case, the Debtor has had continuous negative cash flow, significant monthly and cumulative losses, and has failed to pay significant administrative expenses, including professional fees and amounts owed to vendors that are critical to the Debtor's business. Any one of these factors, on its own, would satisfy the first prong of Bankruptcy Code section 1112(b)(4)(A). Here, all of them are present.

### (b) Absence of a Reasonable Likelihood of Rehabilitation

44.     With respect to the second prong of Bankruptcy Code section 1112(b)(4)(A), the term "rehabilitation" means to put back in good condition and reestablish on a sound basis – it signifies that the debtor will establish a long-term cash flow from which its obligations can be met. In re AdBrite Corp., 290 B.R. 209, 216 (Bankr. S.D.N.Y. 2003). Failing to pay outstanding reorganization costs, such as professional and administrative fees, does not bode well for a debtor's sound reestablishment. See id. A debtor's rehabilitation requires the *likelihood* that its financial affairs will be put back on a firm, sound basis. In re Taub, 427 B.R. at 231.

45.     Cause exists under section 1112(b)(4)(A) when a debtor demonstrates an inability to "stop the bleeding" going forward. In re Strawbridge, 2010 Bankr. LEXIS 544, at *12 (Bankr. S.D.N.Y. Mar. 5, 2010); see also In re Seneca BioEnergy, LLC, 2015 Bankr. LEXIS 1685, at *9 (Bankr. W.D.N.Y. May 19, 2015) (Debtor offered no indication that it would be able to "'stop the bleeding' and return [] to solid financial footing within a reasonable amount of time").

46.     Here, the Debtor, despite relying on significant external cash infusions, nonetheless suffered substantial losses throughout the entirety of the Chapter 11 Case.

---

[14] See the Debtor's entries for Accounts Payable in the Summary of Unpaid Post-Petition Debts included in MOR for the period October 2018 [Docket No. 236, p. 8].

Additionally, the Debtor is administratively insolvent, cannot propose or confirm a plan without a significant cash contribution to pay creditors, and is unable to establish a long-term cash flow from which its obligations can be met. Because Jacob Samra reneged on his commitment to fund the Plan, the Debtor has no prospect for reorganization or rehabilitation.

47.     Because of the Debtor's consistent and substantial negative cash flow in spite of regular external cash infusions, as well as the Debtor's consistent and substantial losses, the Debtor has clearly demonstrated an inability to "stop the bleeding," return to solid financial footing, or rehabilitate its business. With both prongs of section 1112(b)(4)(A) satisfied, there is cause to convert the Chapter 11 Case to a chapter 7 case.

***(II) The Debtor has Failed to Confirm a Plan Within the Time Fixed by the Court***

48.     A Debtor's inability to obtain approval of a disclosure statement and confirmation of a plan is sufficient cause to convert a chapter 11 case to chapter 7. See Lynch, 590 B.R. at 37 (upholding bankruptcy court's conversion of case where Debtor failed to timely file a disclosure statement and plan of reorganization after being granted numerous extensions of time in which to do so).

49.     "If the debtor or some other party in interest is unable or unwilling to put together a convincing business plan within a *reasonable amount of time*, and can offer neither a valid justification for the failure to do so nor a reasonable prospect of being able to accomplish the task *in the near future*, there is often little reason to proceed with the reorganization."

In re Bronx Miracle Gospel Tabernacle Word of Faith Ministries, 2018 Bankr. LEXIS 1534, at *5 (Bankr. S.D.N.Y. May 23, 2018) (quoting 7 COLLIER ON BANKRUPTCY ¶ 1112.04 (16th ed. 2018)) (emphasis in original); see also In re Keener, 2018 Bankr. LEXIS 1108, at *19-20 (Bankr. N.D. Iowa Apr. 10, 2018) (finding cause to convert under section 1112(b)(4)(J) where the Debtor failed to file a disclosure statement or plan during the time set by the court, and failed to provide a good reason for such a delay).

50.     The Debtor has been in bankruptcy for sixteen (16) months, its exclusive period to file a plan has been extended three times and ultimately lapsed, and nonetheless it has been unable to confirm a plan. The Debtor's three filed plans were all based upon a new value contribution by Jacob Samra for the benefit of unsecured creditors. Because of Jacob Samra's bad faith negotiations and blatant disregard for the bankruptcy process and the Debtor's creditors, the Plan collapsed, and the Debtor is unable to file a plan on its own, without third party funding, which the Debtor has not been able to obtain.

51.     The Debtor's clear inability to confirm a plan is additional cause to convert this case and satisfies the burden under Bankruptcy Code section 1112(b)(4)(J).

***(III) Converting the Chapter 11 Case to Chapter 7 is in the Best Interest of Creditors***

52.     Conversion of the Chapter 11 Case, and the immediate appointment of an independent chapter 7 trustee, is in the best interest of creditors.

53.     In determining whether or not conversion is in the best interest of creditors and the estate, courts consider whether creditors are in need of a chapter 7 case to protect their interests. In re Speer, 2018 U.S. Dist. LEXIS 13470, at *2 (D. Conn. Jan. 29, 2018). "If creditors would benefit from the appointment of a Chapter 7 trustee to oversee the liquidation and distribution of assets, conversion is preferable." Id.

54.     Conversion is in the best interest of the creditors where placing a trustee in control of the estate could allow for pursuit of certain litigation opportunities to recover money that the Debtor's principal is not likely to pursue. In re 3333 Main, LLC, 2014 Bankr. LEXIS 2337, at *17 (Bankr. D. Conn. May 29, 2014).

55.     Jacob Samra's bad faith negotiations and delay tactics have caused the Debtor to burn through its scarce financial resources, while racking up additional post-petition losses, and have destroyed the value of the Debtor's business. Additionally, Jacob Samra's actions have

caused this Court, counsel for the Committee, the U.S. Trustee, and the Debtor's own counsel to waste excessive amounts of time, energy, and resources—while the Debtor has incurred exorbitant reorganization expenses that it cannot pay. Jacob Samra's actions appear to have been taken with the intent of driving down the value of the Debtor's business in the hopes that he could acquire it at a bargain basement price, leaving the Debtor's creditors with no recourse.

56.     The only substantial value remaining of the Debtor's estate is its litigation opportunities against (i) Jacob Samra, for his thirteen months of delays and bad faith negotiations which prolonged the Chapter 11 Case to the detriment of the Debtor's creditors, (ii) Yosi Samra, for gross mismanagement and breach of fiduciary duties, and (iii) Eric Samra, for alleged prepetition malfeasance to the detriment of the Debtor's creditors. It is in the best interest of the creditors for an independent trustee to be immediately appointed and begin commencing the necessary litigation against the Samra family.

## RESERVATION OF RIGHTS

57.     The Committee reserves the right, in accordance with applicable law, to further supplement this Motion as necessary.

## NOTICE

58.     The Committee will provide notice of the Motion by email and/or regular mail to (a) the Debtor, (b) the U.S. Trustee, (c) Jacob Samra, and (d) all creditors in the Chapter 11 Case.

## NO PRIOR REQUEST

59.     No prior request for the relief sought in this Motion has been made to this Court or any other court.

**WHEREFORE**, the Committee respectfully requests that the Court enter an order granting the relief requested herein and such other and further relief as the Court deems just and proper.

Dated: February 25, 2019
      New York, New York

<div style="margin-left:40%">

Respectfully submitted,

SULLIVAN & WORCESTER LLP


*/s/* Allison H. Weiss_____
Jeffrey R. Gleit, Esq.
Allison H. Weiss, Esq.
*Counsel for the Official Committee of Unsecured*
*Creditors of Yosi Samra, Inc.*
1633 Broadway
New York, New York 10019
(212) 660-3000 (Telephone)
(212) 660-3001 (Facsimile)
jgleit@sandw.com
aweiss@sandw.com
www.sandw.com

</div>

<u>**Exhibit A**</u>

**Proposed Order**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**
_____
)      Chapter 11
In re:                                              )
)      Case No. 17-12493 (SCC)
YOSI SAMRA, INC.,                   )
)
            Debtor.                       )
_____ )

**ORDER (I) CONVERTING THIS CHAPTER 11 CASE TO CHAPTER 7;**
**(II) DIRECTING THE UNITED STATES TRUSTEE TO IMMEDIATELY APPOINT AN**
**INDEPENDENT CHAPTER 7 TRUSTEE; AND (III) GRANTING RELATED RELIEF**

Upon the motion (the "**Motion**") of the Official Committee of Unsecured Creditors of

Yosi Samra, Inc. (the "**Committee**") [Dkt. No. __] Pursuant to Bankruptcy Code section 1112(b)

for Entry of an Order (I) Converting this Chapter 11 Case to a Chapter 7 Case, (II) Directing the

United States Trustee to Immediately Appoint an Independent Chapter 7 Trustee, and (III)

Granting Related Relief; and there being due and sufficient notice of the Motion; and upon all of

the pleadings filed in connection therewith; and upon the record of the hearing held by the Court

on the Motion on March 27, 2019; and, after due deliberation, the Court having determined for

the reasons stated in the Motion and stated at the hearing that (a) the Committee has established

sufficient cause for the conversion of this case and (b) the conversion of this case is in the best

interests of creditors;

IT IS HEREBY ORDERED THAT:

1.      The Motion is GRANTED as set forth herein.

2.      The Chapter 11 Case is hereby converted to a case under chapter 7 of the

        Bankruptcy Code pursuant to 11 U.S.C. § 1112(b).

3.      The Debtor shall file a schedule of unpaid debts incurred after the commencement

        of the Chapter 11 Case within fifteen (15) days of the date of this order.

4.       The United States Trustee is directed to immediately appoint a chapter 7 trustee.

5.       The terms and conditions of this Order shall be immediately effective and

enforceable upon entry of this Order.


IT IS SO ORDERED.


New York, New York

Dated: _____, 2019


_____
THE HONORABLE SHELLEY C. CHAPMAN
UNITED STATES BANKRUPTCY JUDGE